IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISIONS

| | |
|---|---|
| JAMES E., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:18-CV-1021-N-BK |
| § | |
| ANDREW M. SAUL, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |
| § | |
| § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this case is before the Court for a recommendation on the parties' cross-motions for summary judgment. Doc. 17; Doc. 18. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.  BACKGROUND**

    **A.  Procedural History**

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim for disability insurance benefits and supplemental security income under Title II of the Social Security Act ("Act"). Plaintiff applied for benefits in March 2015, alleging that he had been disabled since June 2009 due to degenerative disc disease of the lumbar and cervical spine, cervical and lumbar radiculopathy, failed surgery syndrome, major depressive disorder, and

chronic pain disorder. Doc. 14-1 at 23, 233-40. Because Plaintiff had previously been denied benefits on March 27, 2013, the ALJ only considered the adjudicated period beginning March 28, 2013 through the date of her decision on April 5, 2017. Plaintiff's claim was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 14-1 at 5-10; Doc. 14-1 at 20-34; Doc. 14-1 at 146-55, 159-66.

### B. Factual Background

Plaintiff was 52 years old on the date of the hearing before the administrative law judge ("ALJ"). Doc. 14-1 at 32; Doc. 14-1 at 233, 281; Doc. 14-1 at 413. He had an eleventh-grade education and past relevant work experience as a van driver-helper, concrete machine operator, material handler, commercial cleaner, electronics assembler, trash collector, small parts and products assembler, and order puller. Doc. 14-1 at 32.

In terms of Plaintiff's medical history, in December 2012, three views of his cervical spine showed an anterior fusion of the C6 and C7 vertebral bodies with a plate and screws as well as intervertebral fusion at the same level and no acute findings. Doc. 14-1 at 367. In April 2013, while incarcerated, Plaintiff was seen by medical personnel twice following complaints of lower back pain, which started once when he got out of bed and once when he bent over to pick up a bar of soap.[1] Doc. 14-1 at 380-81, 383. While Plaintiff complained of pain, he exhibited a full range of motion in all extremities and his back, gait, posture, and station were normal. Doc. 14-1 at 381, 384. Shortly thereafter, Plaintiff underwent x-rays of the lumbar spine which revealed good alignment, well maintained interspaces and vertebral body heights, no fracture or subluxation, no significant degenerative change, and normal appearing sacroiliac joints. Doc.

---

[1] Plaintiff was incarcerated from roughly December 3, 2012 through March 16, 2015. Doc. 14 at 358-415.

14-1 at 371. He was instructed to perform back exercise as tolerated and given Naproxen for his pain. Doc. 14-1 at 384. In October 2014, x-rays of Plaintiff's cervical spine revealed only mild spondylolysis. Doc. 14-1 at 372. In November 2014, Plaintiff underwent a physical during which he had no complaints except past chronic back pain. All of his extremities and his spine, head, and neck were noted to be within normal limits. Doc. 14-1 at 358. In March 2015, Plaintiff's joints were normal, he exhibited full range of motion in his neck and back, his movement, gait, and posture were normal, he could sit easily, and he had full range of motion in all extremities, except that he was limited due to swelling in his right ankle. Doc. 14-1 at 392. He was again prescribed Naproxen and was released from prison shortly thereafter. Doc. 14-1 at 393.

In June 2015, Plaintiff underwent a consultative physical examination with Dr. Walter N. Skinner, M.D. Plaintiff reported that his health was generally good, and he could stand for five or six hours before having to sit down due to discomfort in his neck and arms. Doc. 14-1 at 419. Plaintiff was working on an assembly line placing caps on bottles. Doc. 14-1 at 419-20. Dr. Skinner observed that Plaintiff had full range of motion in his spine and all extremities. Doc. 14-1 at 420. In February 2016, Plaintiff reported that he had not been hospitalized or seen a physician since at least October 2015. Doc. 14-1 at 348.

A March 2016 x-ray of Plaintiff's lumbar spine revealed increased mild-to-moderate multilevel degenerative changes with degenerative disc disease and facet joint osteoarthritis. Doc. 14-1 at 438. He was diagnosed with osteoarthritis of the cervical spine with radiculopathy and low back pain and started on physical therapy. Doc. 14-1 at 425-26. The following month, Plaintiff went to the hospital for severe back pain. Doc. 14-1 at 432. His neck was stiff, he had

limited ability to perform flex and extend movements, his lumbar muscles were tense, and a straight leg raise was positive.  Doc. 14-1 at 433.

In terms of Plaintiff's mental health, he was assessed upon intake into prison and stated that he saw shadows and heard muffled voices that other people did not; however, his mood and motor behavior were within normal limits, he was cooperative, and his speech was clear.  Doc. 14-1 at 414-15.  Upon release, Plaintiff received mental health treatment from Dallas MetroCare from February to July 2016.  Doc. 14-1 at 441-52.  He reported that he had not received any psychological treatment in his adult life.  Doc. 14-1 at 441.  Plaintiff's primary diagnosis with Dallas MetroCare was major depression with psychosis, and he was prescribed two medications.  Doc. 14-1 at 442, 445, 447, 449.  However, he was consistently noted to be cooperative and organized in his thoughts, have intact memory, and be fully oriented, and his attention span was normal.  Doc. 14-1 at 441, 444, 446.  When Plaintiff began care, he reported that he had been seeing shadows and hearing sounds since he went to prison, he was depressed, he did not enjoy anything, and he angered easily.  Doc. 14-1 at 448.  By May 2016, however, he reported feeling happy and, two months later, stated that he was in a great mood.  Doc. 14-1 at 441, 444.

**C. The ALJ's Findings**

In April 2017, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the cervical spine with radiculopathy status post fusion and major depressive disorder.  Doc. 14-1 at 26.  The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.  Doc. 14-1 at 29.  In so finding, the ALJ discussed at length Plaintiff's lower back pain and the treatment he had been provided.  Doc. 14-1 at 29-30.  Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform the duties

required of an electronics worker, cleaner/housekeeper, and hand packager and was thus not disabled within the meaning of the Act. Doc. 14-1 at 33-34.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational

expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. Leggett, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); A*dams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ANALYSIS

#### A. Parties' Arguments and Analysis

*1. Stone Error*

Plaintiff first argues that the ALJ applied the incorrect standard in assessing the severity of his impairments because she did not cite to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) or correctly cite to that legal standard, and thereby erred in not finding Plaintiff's degenerative disc

disease of the lumbar spine to be severe. Doc. 17 at 11-12, 16. Alternatively, Plaintiff asserts that if the ALJ did consider Plaintiff's lumbar spine problems in assessing his RFC, she erred because she interpreted the medical records on her own and did not obtain a medical opinion regarding the type of work Plaintiff could do. Doc. 17 at 15-16.

Defendant responds that because the ALJ proceeded past the second step of the sequential evaluation and considered Plaintiff's lumbar spine impairments in assessing his RFC, it is irrelevant that she did not refer to *Stone* in assessing the severity of Plaintiff's impairments. Doc. 19 at 11-12. Defendant further contends that the ALJ addressed Plaintiff's lumbar spine condition at length, and the evidence from the relevant time period reveals very little limitation in that respect. Doc. 19 at 9-10. Finally, Defendant maintains that the ALJ found Plaintiff to have a severe cervical spine impairment, and Plaintiff does not point to any specific additional limitations that were required to account for his lumbar spine impairment. Doc. 19 at 11.

Without doubt, the ALJ failed to cite to *Stone* and applied the incorrect *Stone* standard in defining the term "severe" impairment or combination thereof as one that:

> *significantly limits* an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that *would have no more than a minimal effect* on an individual's ability to work.

Doc. 13-1 at 18-19 (emphasis added); *cf. Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted) (emphasis added); *cf. Bradford v. Astrue*, 3:10-cv-2302-BK, 2011 WL 1297528, at *5 (N.D. Tex. April 4, 2011) (Toliver, J.) (holding impermissible under *Stone* an ALJ's statements that an impairment or

combination thereof is "severe if [1] "it significantly limits an individual's ability to perform basic work activities" and [2] medical and other evidence establish only a slight abnormality or combination thereof that "would have no more than a minimal effect on an individual's ability to work") (collecting cases).

As Defendant posits, *Stone* error can be harmless if the ALJ proceeds beyond the second step of the sequential analysis. Thus, where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in assessing all of the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe. In other words, the district court properly can draw this inference where the ALJ considers the impairment in question at later stages of the five-step sequential analysis because those stages are premised on a finding at step two that the impairments were severe. *See Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (5th Cir. 1990) (holding that the court must infer that an ALJ found an impairment to be severe when the ALJ proceeded to the third step of the sequential analysis in evaluating the claim).

In this case, after applying the wrong severity standard, the ALJ did take into consideration Plaintiff's lumbar spine impairment at later stages of the sequential evaluation process. Doc. 14-1 at 29-30. As noted above, the Court will generally only consider medical records in the timeframe spanning from March 2013 through April 2017. However, many of the records that Plaintiff relies on in relation to his lumbar spine impairment are from a much earlier time. *See* Doc. 17 at 9 (citing to records dated July 2009 through January 2012). In the relevant span of time, however, there is little mention of Plaintiff's lumbar spine pain in the record. Indeed, from March 2013 through April 2017, Plaintiff sought medical attention for lumbar spine pain only six times. Doc. 14-1 at 380-81, 383, 386; Doc. 14-1 at 425-26, 431-32; Doc. 14-1 at

455. Moreover, on a number of those occasions, he described the pain as moderate or as "coming and going," and it was observed that he had full range of motion and a normal gait. Any *Stone* error was thus harmless and did not cause prejudice, so remand is not required. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that *Stone* error was harmless where it did not affect claimant's substantial rights).

### 2. Major Depressive Disorder

Plaintiff next urges that the ALJ erred in assessing his RFC and the effects of his depression with psychotic features without getting an expert's opinion. Doc. 17 at 18-20. Defendant responds that the ALJ merely properly interpreted the medical evidence in determining Plaintiff's capacity to work, and the records indicate that Plaintiff sought treatment only intermittently and his medications worked well when he took them. Doc. 19 at 12-13.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The *Ripley* panel explained, however, that "[t]he absence of such

9

a statement . . . does not, in itself, make the record incomplete." *Id.* at 557.  Rather, reversal is only appropriate if the claimant can show prejudice, i.e., "that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

In this case, the Court need not consider at length whether the ALJ erred under *Ripley* because Plaintiff simply cannot demonstrate that he could and would have produced evidence that might have changed the ALJ's decision. *Id.* at 728.  As discussed *supra*, his treatment for mental health problems was intermittent and short term, and he responded well to medication. Conditions that are remedied by treatment and/or medication are not disabling. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).  Accordingly, reversal is not warranted.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 17, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, be **GRANTED** and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on August 29, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and specify where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).